IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETER SUNG OHR, REGIONAL DIRECTOR OF REGION 13 OF THE NATIONAL LABOR RELATIONS BOARD, FOR AND ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD,<br><br>Petitioner,<br><br>v.<br><br>NEXEO SOLUTIONS, LLC,<br><br>Respondent. | Case No. 12-CV-01226<br><br>Judge: John W. Darrah<br>Magistrate Judge Sheila M. Finnegan |

## RESPONDENT NEXEO SOLUTIONS, LLC'S ANSWER TO PETITION FOR PRELIMINARY INJUNCTION UNDER SECTION 10(j) OF THE NLRA

As its Answer to the Petition for Preliminary Injunction filed by Petitioner Peter Sung Ohr, Respondent Nexeo Solutions, LLC hereby states as follows:

1. Petitioner is the Regional Director for Region 13 of the Board, an agency of the United States government, and files this petition for and on behalf of the Board.

**ANSWER:** Respondent admits the allegations contained in Paragraph 1 of the Petition, but denies that the National Labor Relations Board ("NLRB" or the "Board") had the power to authorize Petitioner to file the Petition.

2. Jurisdiction of this proceeding is conferred upon this Court by Section 10(j) of the Act.

**ANSWER:** Respondent admits the allegations contained in Paragraph 2 of the Petition, but denies that Petitioner properly invoked the Court's jurisdiction.

3. At all material times, Respondent, a corporation, has maintained an office and place of business in Willow Springs, Illinois, where it is now and has at all material times been engaged within this judicial district in the business of connecting producers and customers of chemicals, plastics, composites and environmental services.

**ANSWER:** Respondent admits the allegations contained in Paragraph 3 of the Petition.

4. On April 7, 2011, Truck Drivers, Oil Drivers, Filling Station and Platform Workers' Union, Local No. 705, an Affiliate of the International Brotherhood of Teamsters, (hereinafter referred to as the Union or Charging Party), filed a charge in Case 13-CA-46694 with the Board alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a)(1) and (5) of the Act. A copy of the original charge is attached as Exhibit A.

**ANSWER:** Respondent admits the allegations contained in Paragraph 4 of the Petition, but denies that the Union's charge had any merit whatever.

5. On November 30, 2011, following a field investigation during which all parties had an opportunity to submit evidence upon the charge in Case 13-CA-46694, the Acting General Counsel of the Board, on behalf of the Board, by Acting Regional Director Arly Eggertsen, issued an Order Consolidating Cases, Consolidated Amended Complaint and Notice of Hearing, pursuant to Section 10(b) of the Act, alleging that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a)(1) and (5) of the Act. A copy of the Order Consolidating Cases, Consolidated Amended Complaint and Notice of Hearing is attached as Exhibit B.

**ANSWER:** Respondent admits the allegations contained in Paragraph 5 of the Petition, except that it denies that the Acting General Counsel acted on behalf of the Board in issuing the

Order Consolidating Cases, Consolidated Amended Complaint and Notice of Hearing, and denies that there is any merit whatever to the allegations that it has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a)(1) and (5) of the Act.

6. At all times since April 1, 2011, based upon Section 9(a) of the Act, the Union has been the exclusive collective-bargaining representative of Respondent's full-time and regular part-time drivers employed at its facility in Willow Springs, Illinois.

**ANSWER:** Respondent admits that the Union has been the exclusive collective bargaining representative of the full-time drivers employed at its facility in Willow Springs, Illinois (the "Facility") since April 1, 2011; however it otherwise denies the allegations contained in Paragraph 6 of the Petition.

7. There is a likelihood that the allegations set forth in the Consolidated Amended Complaint are true and that Respondent engaged in, and is engaging in, unfair labor practices in violation of Section 8(a)(1) and (5) of the Act. More specifically, and as more particularly described in the Consolidated Amended Complaint, Petitioner alleges that there is a likelihood that Petitioner will establish the following:

(a) At all material times, Respondent, a corporation with an office and place of business in Willow Springs, Illinois, has been engaged in the business of connecting producers and customers of chemicals, plastics, composites and environmental services.

(b) Based on a projection of its operations since on or about April 1, 2011, at which time Respondent commenced its operations, Respondent, in conducting its business operations described above in paragraph 8(a), will annually purchase and receive at its Willow Springs, Illinois, facility goods directly from points outside the State of Illinois and from other

enterprises located within the State of Illinois, each of which other enterprises had received these goods directly from points outside the State of Illinois, valued in excess of $50,000.

(c)  Based on a projection of its operations since on or about April 1, 2011, at which time Respondent commenced its operations, Respondent will annually perform services valued in excess of $50,000 in States other than the State of Illinois.

(d)  At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act [29 U.S.C. Sec. 152(2), (6) and (7)].

(e)  About November 5, 2010, Respondent, formerly known as TPG Accolade, LLC, entered into a purchase agreement with Ashland, Inc., herein called Ashland, whereby Respondent agreed to purchase Ashland's assets and continue to operate its distribution business in basically unchanged form, including its Willow Springs, Illinois, facility.

(f)  About April 1, 2011, Respondent finalized its purchase of Ashland's assets, including its Willow Springs, Illinois, facility and since then has continued to operate the business of Ashland in basically unchanged form, and has employed as a majority of its employees individuals who were previously employees of Ashland.

(g)  Based on the operations described above in paragraph 7(e) and (f), Respondent has continued to be the employing entity of Ashland's employees and is a "perfectly clear" successor to Ashland.

(h)  At all material times, the Union has been a labor organization within the meaning of Section 2(5) of the Act [29 U.S.C. Sec. 152(5)].

(i) At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act [29 U.S.C. Sec. 152 (11)], and/or agents of Respondent within the meaning of Section 2(13) of the Act [29 U.S.C. Sec. 152 (13)]:

| | |
|---|---|
| John Hollinshead | Consultant |
| Brian Brockson | Ashland's Logistics Director/ Respondent's Vice-President of Operations |
| Paul Fusco | Ashland's Human Resources Business Partner/ Respondent's Human Resources Business Partner Senior |
| Tony Kuk | Ashland's Plant Manager/ Respondent's Plant Manager |
| Pat Cassidy | Ashland's Regional Logistics Manager/ Respondent's Transition Team Member |
| Kevin Myers | Ashland's Human Resources Representative |

(j) The following employees of Respondent, herein called the Unit, constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

> All full-time and regular part-time drivers employed by Respondent at its Willow Springs, Illinois, facility; but excluding guards and supervisors as defined in the Act.

(k) About 2002, a majority of the Unit employed by Ashland Distribution Company designated and selected the Union as their representative for the purposes of collective bargaining. This designation was embodied in a series of collective-bargaining agreements, the most recent of which was effective November 1, 2006, to October 31, 2010.

(l) Since about April 1, 2011, based on the facts described above in paragraph 7(f) and (g), the Union continued to be the designated exclusive collective-bargaining representative of the Unit.

(m) From about 2002 to about April 1, 2011, based on Section 9(a) of the Act, the Union had been the exclusive collective-bargaining representative of the Unit employed by Ashland.

(n) At all times since about April 1, 2011, based on Section 9(a) of the Act, the Union has been the exclusive collective-bargaining representative of Respondent's employees in the Unit.

(o) About April 1, 2011, Respondent unilaterally ceased making contributions to the Union's Health and Welfare fund and moved its employees to Respondent's health insurance plan.

(p) About April 1, 2011, Respondent unilaterally ceased making contributions to the Union's Pension Trust fund and moved its employees to Respondent's 401(k) plan.

(q) About April 1, 2011, Respondent unilaterally eliminated its daily guarantee of 8 hours pay to employees for each work day and its weekly guarantee of 40 hours pay to employees for each work week.

(r) About April 1, 2011, Respondent unilaterally changed the overtime policy by eliminating overtime pay for working more than 8 hours per day and instead requiring employees to work more than 40 hours per week in order to receive overtime pay.

(s) About April 1, 2011, Respondent unilaterally reduced employees' vacation pay from 50 hours to 40 hours for each week of vacation taken.

(t) The subjects set forth above in paragraph 7(o)-(s) relate to the wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purpose of collective bargaining.

(u) Respondent engaged in the conduct described above in paragraph 7(o)-(s) without prior notice to the Union and without affording the Union an opportunity to bargain with Respondent with respect to this conduct.

(v) By the conduct described above in paragraph 7(o)-(u), Respondent has been failing and refusing to bargain collectively and in good faith with the exclusive collective- bargaining representative of its employees in violation of Section 8(a)(l) and (5) and affecting commerce within the meaning of Section 2(6) and (7) of the Act.

(w) The unfair labor practices of Respondent described above in paragraph 7(o)-(v) have taken place within this judicial district.

**ANSWER:** Respondent denies the allegations contained in Paragraph 7 of the Petition, except as otherwise indicated in the following responses to each subparagraph of Paragraph 7.

(a) Respondent admits the allegations contained in Paragraph 7(a).

(b) Respondent admits the allegations contained in Paragraph 7(b).

(c) Respondent admits the allegations contained in Paragraph 7(c)

(d) Respondent admits the allegations contained in Paragraph 7(d).

(e) Respondent admits that, about November 5, 2010, it entered into an asset purchase agreement with Ashland, Inc. ("Ashland") under which Respondent agreed to purchase certain assets of Ashland, including those comprising the Facility. Respondent otherwise denies the allegations contained in Paragraph 7(e).

(f) Respondent admits that, about April 1, 2011, it finalized its purchase of certain assets of Ashland, including those comprising the Facility, and that, since that date, Respondent has operated the business that it acquired and employed as a majority of its

employees individuals who were previously employees of Ashland. Respondent otherwise denies the allegations contained in Paragraph 7(f).

 (g) Respondent denies the allegations contained in Paragraph 7(g).

 (h) Respondent admits the allegations contained in Paragraph 7(h).

 (i) In answer to Paragraph 7(i), Respondent admits that: (1) John Hollinshead has served as a consultant to Respondent and, in that capacity, has been an agent of Respondent, within the meaning of the Act; (2) Brian Brockson was formerly employed by Ashland, is currently employed by Respondent as its Vice President of Operations and, since becoming an employee of Respondent, has been a supervisor and agent of Respondent, within the meaning of the Act; (3) Paul Fusco was formerly employed by Ashland, is currently employed by Respondent as a Senior Human Resources Business Partner and, since becoming an employee of Respondent, has been an agent of Respondent, within the meaning of the Act; (4) Tony Kuk was formerly employed by Ashland, is currently employed by Respondent as a Plant Manager and, since becoming an employee of Respondent, has been a supervisor and agent of Respondent, within the meaning of the Act; (5) Pat Cassidy was formerly employed by Ashland, is currently employed by Respondent and, since becoming an employee of Respondent, has been a supervisor and agent of Respondent, within the meaning of the Act; and (6) Kevin Myers has at all times been an employee of Ashland. Respondent otherwise denies the allegations contained in Paragraph 7(i).

 (j) Respondent admits that all full-time drivers employed at the Facility constitute an appropriate unit, within the meaning of the Act, for purposes of collective bargaining. Respondent otherwise denies the allegations contained in Paragraph 7(j).

(k) Respondent admits that, prior to April 1, 2011, all full-time drivers Ashland employed at the Facility were represented by the Union for purposes of collective bargaining, and that the effective dates of the last collective bargaining agreement between Ashland and the Union were November 1, 2006, to October 31, 2010. Respondent otherwise denies the allegations contained in Paragraph 7(k).

(l) Respondent admits that, since about April 1, 2011, the Union has been the exclusive collective bargaining representative of all full-time drivers employed at the Facility. Respondent otherwise denies the allegations contained in Paragraph 7(l).

(m) Respondent admits that, until about April 1, 2011, the Union was the exclusive collective bargaining representative of all full-time drivers Ashland employed at the Facility. Respondent otherwise denies the allegations contained in Paragraph 7(m).

(n) Respondent admits that, since about April 1, 2011, the Union has been the exclusive collective bargaining representative of all full-time drivers employed by it at the Facility. Respondent otherwise denies the allegations contained in Paragraph 7(n).

(o) Respondent admits that, on about April 1, 2011, it began covering its employees under a Respondent-sponsored health insurance plan. Respondent denies that it was ever under an obligation to contribute to what the Petition describes as the "Union's Health and Welfare fund," and otherwise denies the allegations contained in Paragraph 7(o).

(p) Respondent admits that, on about April 1, 2011, it began covering its employees under a Respondent-sponsored 401(k) plan. Respondent denies that it was ever under an obligation to contribute to what the Petition describes as the "Union's Pension Trust fund," and otherwise denies the allegations contained in Paragraph 7(p).

(q) Respondent denies the allegations contained in Paragraph 7(q).

  (r)  Respondent denies the allegations contained in Paragraph 7(r).

  (s)  Respondent denies the allegations contained in Paragraph 7(s).

  (t)  Respondent admits the allegations contained in Paragraph 7(t).

  (u)  Respondent denies the allegations contained in Paragraph 7(u).

  (v)  Respondent denies the allegations contained in Paragraph 7(v).

  (w)  Respondent denies the allegations contained in Paragraph 7(w).

  8.  Respondent's unfair labor practices, as described above in paragraph 7(o)-(v) have irreparably harmed, and are continuing to irreparably harm employees of the Respondent in the exercise of rights guaranteed them by Section 7 of the Act, the Union's status as bargaining representative, and the public interest in deterring continued violations. More particularly, Respondent's unfair labor practices have caused the following harm:

  (a)  Respondent's unlawful unilateral changes have required unit employees to work under significantly reduced terms and conditions of employment, including major changes to their health and pension plans as well as reduced overtime and vacation benefits. The unilateral changes have irreparably chilled, if not obliterated, the employees' support for the Union at a time when it is still attempting to bargain an initial contract with Respondent; and

  (b)  Respondent's unlawful conduct has destroyed the employees' efforts to exercise their Section 7 rights and further deprived employees of the benefits of good faith collective bargaining because the unlawful unilateral changes require the Union to bargain from a disadvantage and undermine the entire collective-bargaining process.

  **ANSWER:** Respondent denies the allegations contained in Paragraph 8 of the Petition and each subparagraph thereof.

9. There is no adequate remedy at law for the irreparable harm being caused by Respondent's unfair labor practices, as described above in paragraph 7(o)-(v). Absent interim relief, the delay in obtaining a remedy through traditional Board administrative proceedings will negatively affect the Board's ability to ensure industrial peace and protect employees' Section 7 rights to join or assist labor organizations and to bargain collectively through their own representatives. Moreover, unless the Court issues an order requiring interim rescission of the Respondent's unlawful unilateral changes, such conduct will stand as a clear and forceful message. Employees will learn that union support and other protected activity will likely result in further unilateral changes or other adverse employment actions and that neither the Board nor the Union can effectively protect them.

**ANSWER:** Respondent denies the allegations contained in Paragraph 9 of the Petition.

10. Granting the temporary injunctive relief requested by Petitioner will cause no undue hardship to Respondent. Specifically, should the interim order be granted, the imposition of the cease and desist remedy requires nothing more than that Respondent obey the law. If the injunction is granted, the Respondent will be required to rescind its unlawful unilateral changes during the pendency of this proceeding, effectively re-establishing the pre-violation employment state. Moreover, there is no evidence that rescission of the unilateral changes would pose a significant burden upon the Respondent. Similarly, there is substantial public interest in granting interim relief, which maintains the Board's effectiveness, ensures that employees will be able to exercise their Section 7 rights and facilitates the collective-bargaining process.

Absent injunctive relief, Respondent will reap the benefit of its own misconduct, *i.e.*, it will erode the support of the employees in their collective-bargaining representative and strip

them of the benefits of good faith collective bargaining. Indeed, there is the distinct danger that, without interim rescission of the unilateral changes, Respondent will effectively accomplish its unlawful goals of permanently undermining collective bargaining and ridding its workplace of union supporters. This is due to the fact that with the passage of time, employees will be less enthusiastic about continuing their union support such that the bargaining unit will be deprived of its most articulate and committed union supporters. In fact, the predictable lack of progress at the bargaining table resulting from the unlawful unilateral changes could seal the Union's fate.

 **ANSWER:** Respondent denies the allegations contained in Paragraph 10 of the Petition.

 11. In balancing the equities in this matter, the imposition of a cease and desist order and the rescission of the unilateral changes, pending the Board's final order, would not be unduly burdensome on Respondent. Absent this remedy, the administrative remedies would be insufficient to restore the status quo ante over the passage of time. In the instant case, should the interim order be granted, the imposition of a cease and desist remedy to restore the status quo would require nothing more than for Respondent to obey the law. The affirmative remedy would likewise simply provide employees with the benefits to which they are entitled. In sum, given these circumstances, injunctive relief is imperative since the passage of time reasonably necessary to adjudicate the unfair labor practice charges on the merits may dissipate the effectiveness of the ultimate remedial power of the Board, and will certainly dissipate employee support for the Union- which is the ultimate goal of Respondent's unfair labor practices.

 **ANSWER:** Respondent denies the allegations contained in Paragraph 11 of the Petition.

12. Upon information and belief, to avoid the serious consequences set forth above, it is essential, just, proper, and appropriate for the purposes of effectuating the policies of the Act and avoiding substantial, irreparable and immediate injury to such policies, to the public interest, and to the employees involved herein, and in accordance with the purposes of Section 10(j) of the Act, that, pending final disposition of the matters presently pending before the Board, Respondent be enjoined and restrained as herein prayed.

**ANSWER:** Respondent denies the allegations contained in Paragraph 12 of the Complaint.

## PRAYER FOR RELIEF

Respondent denies that Petitioner is entitled to the relief requested in the Petition's prayer for relief or to any other relief whatever in this proceeding.

## AFFIRMATIVE AND OTHER DEFENSES

1. The Petition fails to allege facts upon which it could be found that Respondent violated the Act in any respect, and otherwise fails to state any claims against Respondent upon which any remedy could be based.

2. The claims alleged in the Petition are barred in whole or in part under the doctrines of waiver and estoppel.

3. The claims alleged in the Petition are barred to the extent that Respondent's conduct was privileged, justified by business necessity and consented to by the Union.

4. The claims alleged in the Petition are barred because, under current law, as established in *NLRB v. Burns Int'l Security Services*, 406 U.S. 272 (1972), and interpreted in *Spruce Up Corp.*, 209 NLRB 194, (1974), *enforced*, 529 F.2d 516 (4th Cir. 1975), and later cases, Respondent, as an asset purchaser, had the right unilaterally to set the initial terms and

conditions under which it employed the Facility's Union-represented drivers. Respondent lawfully exercised that right by advising the Union, prior to offering the drivers employment, and the drivers, in their offer letters, which were sent six weeks before the closing, that it was not adopting any of the terms of Ashland's expired collective bargaining agreement with the Union but was setting new terms that included, among other things, participation in Respondent-sponsored group health and 401(k) plans, not the multi-employer, Union-affiliated plans in which they participated as Ashland employees.

5. The claims alleged in the Petition are barred because Respondent cannot be found under *Burns* and its progeny to have unilaterally changed Ashland-derived terms of employment that Respondent was not under a legal obligation to adopt, that Respondent expressly disclaimed it was adopting, that the drivers acknowledged Respondent was not adopting when they accepted its offer of employment, and that Respondent never adopted.

6. The claims alleged in the Petition are barred because the asset purchase agreement between Respondent and Ashland did not impose any obligation upon Respondent to adopt or assume any of the terms of Ashland's expired collective bargaining agreement with the Union, and gave Respondent the right to establish initial employment terms with respect to the matters in issue.

7. The claims alleged in the Petition are barred because, even if Respondent could be found to be a "perfectly clear successor," which it cannot, Respondent satisfied any duty it could be found to have had under *Burns* to consult with the Union about initial employment terms by recognizing and bargaining with the Union prior to commencing operations.

8. Even if Respondent could be found to be a perfectly clear successor and to have unlawfully changed the employment terms at issue in this matter on April 1, 2011, which it

cannot, an injunction requiring Respondent to restore any of those terms would be barred under either the test adopted in *Capital Cleaning Contractors, Inc. v. NLRB*, 147 F.3d 999, 1010-11 (D.C. Cir. 1998) or *Planned Building Services, Inc.*, 347 NLRB 670, 675-76 (2006), because if it is assumed that Respondent had not changed those terms, Respondent and the Union would have, nevertheless, after a reasonable period of bargaining, and well prior to the filing of the Petition, reached either an agreement or good faith impasse in bargaining that would have resulted in the establishment of the initial employment terms that Respondent adopted.

9. The Petition is barred because to award Petitioner the injunctive relief he seeks would be to compel Respondent to implement employment terms to which Respondent has never agreed, in contravention of Section 8(d) of the Act, which expressly provides that the statutory duty to bargain "does not compel either party to agree to a proposal or require the making of a concession," and National labor policy, as articulated in *Burns* and later cases.

10. The Petition is barred because the injunctive relief Petitioner seeks amounts to a penalty and, as such, exceeds the remedial power the Board has under Section 10(c) of the Act.

11. The Petition must be dismissed because the Board did not have a duly constituted quorum of members at the time Petitioner was authorized to file it, depriving the Board of the power under to pursue relief under Section 10(j) of the Act.

Respondent reserves the right to assert any additional affirmative defenses of which it becomes aware during the course of this proceeding.

WHEREFORE, Respondent respectfully prays that the Petition be dismissed in its entirety and with prejudice, and that the Court grant to Respondent any other relief deemed to be just and proper by the Court.

-16-

                                  Respectfully submitted,

                                  */s/Adam C. Wit*

                                  */s/ David A. Kadela*

                                  Attorneys for Respondent

Adam C. Wit  
David A. Kadela  
LITTLER MENDELSON, P.C.  
A Professional Corporation  
321 North Clark Street  
Suite 1000  
Chicago, IL 60654  
312.372.5520  

Dated: March 21, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2012, I electronically filed the foregoing Answer with the Clerk of the Court, using the CM/ECF filing system, which will send such notification to the following:

J. Edward Castillo
R. Jason Patterson
Counsel for Petitioner
National Labor Relations Board, Region 13
209 South LaSalle Street, Suite 900
Chicago, IL 60604

Thomas D. Allison
N. Elizabeth Reynolds
Allison, Slutsky & Kennedy, P.C.
230 West Monroe Street, Suite 2600
Chicago, IL 60606

/s/ Adam C. Wit
Attorney for Respondent